Christopher T. Casamassima (SBN: 211280)
chris.casamassima@wilmerhale.com
Matthew Benedetto (SBN: 252379)
matthew.benedetto@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: +1 213 443 5300
Facsimile: +1 213 443 5400

Alan E. Schoenfeld (*pro hac vice*)
alan.schoenfeld@wilmerhale.com
Jenny Pelaez (*pro hac vice*)
jenny.pelaez@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: +1 212 230 8800
Facsimile: +1 212 230 8888

Attorneys for Defendant
Chase Bank USA, N.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAVEED DEZFOLI, individually, and on all others similarly situated,<br><br>  Plaintiff,<br><br>  vs.<br><br>CHASE BANK USA, N.A. and DOES 1-100,<br><br>  Defendants. | Case No.  2:16-cv-04315 (R) (RAO)<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT CHASE BANK USA, N.A.'S MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Hearing Date: September 6, 2016<br>Time:          10:00 A.M.<br>Courtroom:   8<br>Judge:       Hon. Manuel L. Real |

1

**<u>TABLE OF CONTENTS</u>**

2  INTRODUCTION ............................................................................................. 1

3  BACKGROUND .............................................................................................. 2

4  STANDARD OF REVIEW ............................................................................... 3

5  ARGUMENT.................................................................................................... 4

6      I.    The FAC Fails To State A Claim Under The FCRA................................ 4

7      II.   The FAC Fails To State A Claim Under The CCRAA ....................... 5

8      III.  The FAC Fails To State A Claim Under The UCL ............................ 8

9          A.   The UCL Claim Is Inadequately Pleaded................................. 8

10         B.   The UCL Claim Is Preempted ................................................ 11

11         C.   Because Dezfoli Can Seek Neither Restitution Nor An

12             Injunction, The UCL Claim Fails And Must Be Dismissed .... 12

13     IV.  The FAC Fails To State A Claim Under The CLRA.......................... 13

14         A.   The CLRA Claim Is Preempted ................................................ 14

15         B.   The CLRA Does Not Apply Here .............................................. 14

16         C.   The CLRA Claim Is Inadequately Pled.................................... 15

17 CONCLUSION................................................................................................. 16

18

19

20

21

22

23

24

25

26

27

28

i

MEMORANDUM IN SUPPORT OF CHASE BANK USA, N.A.'S
MOTION TO DISMISS
*Dezfoli v. JPMorgan Chase Bank, et al.*, Case No. 2:16-cv-04315 (R) (RAO)

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alborzian v. JPMorgan Chase Bank, N.A.*,

    235 Cal. App. 4th 29 (Cal. Ct. App. 2015) .................................................. 15

*Anthony v. Cach, LLC*, No. CV 12-9057 CAS (JCGx),

    2013 WL 989883 (C.D. Cal. Mar. 11, 2013) ................................................. 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................... 3

*Bailey v. Equifax Information Services, LLC*,

    No. 13-10377, 2013 WL 3305710 (E.D. Mich. July 1, 2013) ....................... 6

*Banga v. Allstate Insurance Co.*, No. CIV S-08-1518 LKK EFB PS,

    2010 WL 1267841 (E.D. Cal. Mar. 31, 2010) ............................................ 11

*Barakezyan v. BMW of North America, LLC*, CV 16-00173 SJO

    (GJSx), 2016 WL 2840803 (C.D. Cal. Apr. 7, 2016) ................................. 10

*Bates v. United Parcel Service, Inc.*,

    511 F.3d 974 (9th Cir. 2007) ................................................................ 12, 13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................... 3

*Berry v. American Express Publishing, Inc.*,

    147 Cal. App. 4th 224 (Cal. Ct. App. 2007) ............................................... 14

*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001) ..................................... 9

*Carvalho v. Equifax Information Services, LLC*,

    629 F.3d 876 (9th Cir. 2010) .................................................................... 5

*Consumer Solutions REO, LLC v. Hillery*,

    658 F. Supp. 2d 1002 (N.D. Cal. 2009) ..................................................... 15

*Cornejo v. JPMorgan Chase Bank*, No. CV 11-4119 CAS VBKX,

    2011 WL 6149242 (C.D. Cal. Dec. 12, 2011) ............................................. 9

*Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-727-LAB-MDD,

    2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) ................................................. 9

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009).......... 4, 5, 11

*Harrold v. Experian Information Solutions, Inc.*, No. C 12-02987

    WHA, 2012 WL 4097708 (N.D. Cal. Sept. 17, 2012).................................... 5

*Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139 (N.D. Cal. 2005).................... 12

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009)...................................... 9

*Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937 (Cal. 2003) ................ 12

*Mathy v. Chase Manhatt[a]n Bank, USA*, No. EDCV 08-571 VAP

    (AJWx), 2009 WL 3489398 (C.D. Cal. Oct. 26, 2009) ................................. 2

*McKenzie v. Federal Express Corp.*, 275 F.R.D. 290 (C.D. Cal. 2011) ................ 13

*Miller v. Bank of America, National Ass'n*,

    858 F. Supp. 2d 1118 (S.D. Cal. 2012) ........................................................ 11

*Moran v. Screening Pros LLC*, No. 2:12-cv-05808-SVW-AGR,

    2012 WL 10655744 (C.D. Cal. Sept. 28, 2012)........................................... 13

*Mortimer v. Bank of America, N.A.*, No. C-12-01959 JCS,

    2013 WL 57856 (N.D. Cal. Jan. 3, 2013) .................................................... 11

*Moss v. United States Secret Service*, 572 F.3d 962 (9th Cir. 2009) ...................... 4

*Noori v. Bank of America*, No. CV 15-01467-AB (AFMx),

    2016 WL 3124628 (C.D. Cal. May 26, 2016) ............................................... 4

*Pagazani v. Equifax Information Services, LLC*, No. 15-cv-61467,

    2016 WL 2997586 (S.D. Fla. May 25, 2016) ................................................ 7

*Pedro v. Equifax, Inc.*, No. 1:15-CV-3735-TWT,

    2016 WL 2756217 (N.D. Ga. May 12, 2016) ............................................ 6, 7

*Pom Wonderful LLC v. Welch Foods, Inc.*, No. CV 09-567 AHM

    (AGRx), 2009 WL 5184422 (C.D. Cal. Dec. 21, 2009) .............................. 12

-iii-

*Profant v. Have Trunk Will Travel*, No. CV 11-05339-RGK (OPx),

    2011 WL 6034370 (C.D. Cal. Nov. 29, 2011)..............................................12

*Puentes v. Wells Fargo Home Mortgage, Inc.*,

    160 Cal. App. 4th 638 (Cal. Ct. App. 2008) ...........................................10

*Quinlan v. Citimortgage, Inc.*, No. 2:11-cv-00986-MCE-EFB,

    2011 WL 5299311 (E.D. Cal. Nov. 2, 2011) ..............................................6

*Riese v. Chase Home Finance, LLC*, No. C 11-03297 NJV,

    2011 WL 4344590 (N.D. Cal. Sept. 13, 2011) ..........................................5

*Roybal v. Equifax*, 405 F. Supp. 2d 1177 (C.D. Cal. 2005) ...............................14

*Schulken v. Washington Mutual Bank*, No. 09-CV-02708-LHK,

    2012 WL 28099 (N.D. Cal. Jan. 5, 2012) ....................................................13

*Townsend v. National Arbitration Forum, Inc.*, No. CV 09-9325-

    VBF(RNBx), 2012 WL 12736 (C.D. Cal. Jan. 4, 2012)...............................15

*Walsh v. Nevada Department of Human Resources*,

    471 F.3d 1033 (9th Cir. 2006)........................................................................13

## STATUTES, RULES, AND REGULATIONS

12 C.F.R. Pt. 1002, Supp. I, § 1002.10 (2011) .....................................................7

12 C.F.R. § 1002.10 (2011) ....................................................................................7

12 C.F.R. Pt. 1026, Supp. I § 1026.12 (2014) .......................................................2

15 U.S.C. § 1681...............................................................................3, 4, 5, 11, 12

Cal. Bus. & Prof. Code § 17200 ............................................................................3

Cal. Bus. & Prof. Code § 17500 ..........................................................................10

Cal. Civ. Code § 1761...................................................................................14-15

Cal. Civ. Code § 1770..............................................................................3, 14, 15, 16

Cal. Civ. Code § 1785.25(a) ........................................................................3, 5, 11

MEMORANDUM IN SUPPORT OF CHASE BANK USA, N.A.'S
MOTION TO DISMISS
*Dezfoli v. JPMorgan Chase Bank, et al.*, Case No. 2:16-cv-04315 (R) (RAO)

1

## OTHER AUTHORITIES

Robert B. Avery *et al.*, *Credit Where None Is Due? Authorized User*
    *Account Status and "Piggybacking Credit"* 1 (Fed. Reserve Bd.
    Mar. 5, 2010), *available at*
    https://www.federalreserve.gov/pubs/feds/
    2010/201023/201023pap.pdf ……………………………………… 7

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-v-

## **INTRODUCTION**

This is a credit reporting case.  Naveed Dezfoli alleges he was injured when Chase Bank USA, N.A. ("Chase") furnished information to the credit bureaus regarding Dezfoli's status as an authorized user on his cousin's credit card account. Authorized users are common in the credit card industry; accountholders may add authorized users (frequently relatives) to their accounts to allow those persons to make purchases with the credit card, while the contractual liability for debts incurred on the credit card remains with the accountholder.  Dezfoli does not dispute that his cousin did in fact add him as an authorized user to the cousin's account; nor does he fault his cousin for doing so.  Dezfoli's grievance, instead, is that Chase should not have allowed his cousin to add Dezfoli without independently securing advance consent from Dezfoli himself.  Because Chase did not take this step, Dezfoli alleges, Chase's subsequent furnishing of information about him to the credit bureaus was "inaccurate."

Dezfoli's First Amended Complaint (ECF No. 17) ("FAC") should be dismissed because its central premise has no basis in the law.  Dezfoli *was* added as an authorized user, as he himself alleges, so Chase's furnishing to the credit bureaus about him *as an authorized user* was accurate.  Indeed, apart from conclusory allegations of "inaccurate reporting" (*e.g.*, FAC ¶ 13), Dezfoli does not allege that any actual information Chase furnished to the credit bureaus was incorrect.  For example, he does not claim that Chase reported him as an actual accountholder liable for the balance on his cousin's credit card; Chase did not.  Nor does Dezfoli claim that Chase furnished the wrong balance on the account; again, Chase did not.  Dezfoli's only complaint is that he did not want to be an authorized user in the first place, and that Chase—which Dezfoli sues in its role as an "information furnisher" (*id.* ¶ 5)—accordingly engaged in "inaccurate reporting"

-1-

by furnishing any information at all about him in connection with his cousin's account.  There is no legal basis for that assertion.

For that, and additional reasons set forth below, the FAC should be dismissed with prejudice and leave to replead should not be granted.

## BACKGROUND

In or around February 2016, Dezfoli's cousin added him as an authorized user on the cousin's Chase credit card.  FAC ¶ 9.[1]  According to the FAC, Dezfoli did not discuss that decision with Chase, and therefore did not give Chase advance permission to be added as an authorized user to his cousin's account.  *Id.* ¶ 10.  In Dezfoli's view, Chase should have required his social security number before he could be added as an authorized user to the account.  *Id.* ¶ 18.  Dezfoli alleges that once he was added as an authorized user, Chase reported unspecified "derogatory and inaccurate statements and information relating to [him] and [his] credit history to various credit reporting agencies," arising from his status as an authorized user on his cousin's account.  *Id.* ¶ 11.  When Dezfoli complained to Chase, Chase removed the reporting.  *Id.* ¶ 20.

---

[1]  Credit card issuers (including Chase) generally permit accountholders to add authorized users to their accounts.  Authorized users are provided with a credit card at the request of the accountholder, and they can use the card to make purchases.  *See, e.g.*, *Mathy v. Chase Manhatt[a]n Bank, USA*, No. EDCV 08-571 VAP (AJWx), 2009 WL 3489398, at *1 (C.D. Cal. Oct. 26, 2009).  Authorized users, however, are not liable for purchases made on the credit card; the accountholder is solely liable.  *See, e.g.*, *id.*  Federal regulatory guidance expressly permits credit card issuers to add authorized users to accounts at the accountholder's request.  *See* 12 C.F.R. Pt. 1026, Supp. I § 1026.12 ¶ 12(a)(1)(6) (2014) ("A card issuer may issue a credit card to the person who requests it, and to anyone else for whom that person requests a card and who will be an authorized user on the requester's account.  In other words, cards may be sent to consumer A on A's request and also (on A's request) to consumers B and C, who will be authorized users on A's account.").

MEMORANDUM IN SUPPORT OF CHASE BANK USA, N.A.'S
MOTION TO DISMISS
*Dezfoli v. JPMorgan Chase Bank, et al.*, Case No. 2:16-cv-04315 (R) (RAO)

The FAC asserts four causes of action.  The first and second causes of action assert that Chase violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.25(a), by furnishing information about him as an authorized user without obtaining his prior permission.  FAC ¶¶ 35-46.  The third cause of action is for violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, under the statute's unfair, fraudulent, and unlawful prongs.  Dezfoli alleges that Chase harmed authorized users by furnishing credit information about them without confirming, in advance, that they wished to be added to the account.  *See* FAC ¶¶ 47-64.  The fourth cause of action is for violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770, and alleges that Chase made "misrepresentations … with regard[] to the unauthorized debts" reported on "credit reports, and the obligations associated with those misplaced debts," FAC ¶ 67.

Dezfoli filed this action in federal court on May 10, 2016 and dismissed it the same day.  *See Dezfoli v. JPMorgan Chase Bank*, No. 2:16-cv-03192-R-RAO, ECF. Nos. 1, 7 (C.D. Cal. 2016).  On May 19, he re-filed the case in state court.  Chase removed the action to this Court on June 16, 2016.  Dezfoli filed his FAC on July 8, 2016.  This motion is accordingly addressed to Dezfoli's third pleading.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original).  "[A] formulaic recitation of the elements of a cause of action will not do," and the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*,

MEMORANDUM IN SUPPORT OF CHASE BANK USA, N.A.'S
MOTION TO DISMISS
*Dezfoli v. JPMorgan Chase Bank, et al.*, Case No. 2:16-cv-04315 (R) (RAO)

550 U.S. 544, 555 (2007).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted.)

## **ARGUMENT**

### I.   **The FAC Fails To State A Claim Under The FCRA**

Dezfoli's first claim is brought under the FCRA, but Dezfoli does not specify any FCRA provision he believes Chase violated.  The only provision he cites, 15 U.S.C. § 1681 (*see* FAC ¶¶ 39-40), contains the "[c]ongressional findings and statement of purpose," but no actual requirements.  Dezfoli apparently proceeds, then, on the theory that Chase violated the FCRA's two provisions governing the furnishing of "inaccurate" information.  But any such theory is fatally flawed.

The first provision governing furnishing, § 1681s-2(a), is "enforceable only by federal or state agencies," and thus cannot provide the basis for any claim here. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009).

The second provision, § 1681s-2(b), only addresses the furnishing of inaccurate information in a specific context, namely *after* a consumer has initiated a complaint *with a credit bureau*.  Subsection (b) requires that a furnisher, after receiving notice from a credit bureau about such a dispute, "conduct an investigation regarding the disputed information, review all relevant information provided by the [Credit Reporting Agency (also known as a CRA or credit bureau)] receives, and report the results of the investigation to the CRA, among other steps." *Noori v. Bank of Am.*, No. CV 15-01467-AB (AFMx), 2016 WL 3124628, at \*3 (C.D. Cal. May 26, 2016)  It is well-established that "[t]hese obligations are triggered 'upon notice of dispute'—that is, when a person who furnished

MEMORANDUM IN SUPPORT OF CHASE BANK USA, N.A.'S
MOTION TO DISMISS
*Dezfoli v. JPMorgan Chase Bank, et al.*, Case No. 2:16-cv-04315 (R) (RAO)

1   information to a CRA receives notice from the CRA that the consumer disputes the

2   information." *Gorman*, 584 F.3d at 1154.  "[N]otice of a dispute received directly

3   from the consumer does not trigger furnishers' duties under subsection (b)." *Id.*

4          The FAC's only mention of a "dispute" is that Chase allegedly "failed to

5   correct the disputed information within thirty days of [Dezfoli's] dispute of that

6   information."  FAC ¶ 20.  But the FAC conspicuously lacks any allegation that

7   Dezfoli disputed Chase's reporting *with a credit bureau*, much less that any bureau

8   notified Chase of a dispute.  This failure is fatal to any claim under § 1681s-2(b).

9   *See Anthony v. Cach, LLC*, No. CV 12-9057 CAS (JCGx), 2013 WL 989883, at *3

10  (C.D. Cal. Mar. 11, 2013) (granting motion to dismiss because plaintiff "only

11  contends that plaintiff himself provided defendant with a notice of dispute"); *Riese*

12  *v. Chase Home Fin., LLC*, No. C 11-03297 NJV, 2011 WL 4344590, at *4-5 (N.D.

13  Cal. Sept. 13, 2011) (granting motion to dismiss because plaintiff alleged only that

14  he complained directly to furnisher about false credit report).

15          **II.    The FAC Fails To State A Claim Under The CCRAA**

16          Dezfoli next alleges that Chase violated the CCRAA by furnishing

17  "information" that Chase allegedly "kn[ew] or should [have known was]

18  incomplete or inaccurate."  FAC ¶ 42 (quoting Cal. Civ. Code § 1785.25(a)).[2]  This

19  claim fails because it is not "inaccurate" to furnish information about an authorized

20  user to a credit bureau.  As Dezfoli acknowledges, he *was* added as an authorized

21

22  ───────────────────

    [2]    Although the FAC quotes subsections (b) and (c) of the CCRAA (FAC ¶¶ 43,

23  44), it makes clear that the CCRAA claim is brought solely "[b]ased on these

24  [alleged] violations of Civil Code § 1785.25(a)."  FAC ¶ 46.  Indeed, Dezfoli could
    not sue under subsections (b) or (c) because "[s]ubsections (b) [and] (c) … of

25  Section 1785.25 are preempted by FCRA[.]"  *Harrold v. Experian Info. Sols., Inc.*,
    No. C 12-02987 WHA, 2012 WL 4097708, at *3 (N.D. Cal. Sept. 17, 2012); *see*

26  *also Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010)

27  ("section 1785.25(a) is the only substantive CCRAA furnisher provision
    specifically saved by the FCRA").

28

MEMORANDUM IN SUPPORT OF CHASE BANK USA, N.A.'S
MOTION TO DISMISS
*Dezfoli v. JPMorgan Chase Bank, et al.*, Case No. 2:16-cv-04315 (R) (RAO)

user to his cousin's credit card account. *Id.* ¶ 9.  And he does not allege, other than in conclusory fashion (*e.g.*, *id.* ¶¶ 11, 13, 14), that any information Chase did furnish in connection with his authorized-user status was factually inaccurate:  He does not allege, for example, that Chase inaccurately indicated that he was a contractually liable primary accountholder (as opposed to an authorized user), or that Chase furnished the wrong account balance.

Of course, furnishing truthful information about a consumer does not violate the CCRAA.  *See, e.g.*, *Quinlan v. Citimortgage, Inc.*, No. 2:11-cv-00986-MCE-EFB, 2011 WL 5299311, at *3 (E.D. Cal. Nov. 2, 2011) (dismissing CCRAA claim where plaintiff failed to allege "what information was inaccurate or to which agency or agencies the allegedly improper information was provided").  More specifically, courts consistently hold that furnishing truthful information about authorized users—including, for example, negative information—does not constitute "inaccuracy" for purposes of credit-reporting obligations.  *See, e.g.*, *Pedro v. Equifax, Inc.*, __ F. Supp. 3d __, No. 1:15-CV-3735-TWT, 2016 WL 2756217, at *4 (N.D. Ga. May 12, 2016) ("listing accurate authorized user information does not violate" the FCRA's prohibition on inaccurate reporting), *appeal docketed*, No. 16-13404 (11th Cir.); *Bailey v. Equifax Info. Servs., LLC*, No. 13-10377, 2013 WL 3305710, at *6 (E.D. Mich. July 1, 2013) (report neither inaccurate nor misleading under FCRA where defendant credit bureau reported

-6-

MEMORANDUM IN SUPPORT OF CHASE BANK USA, N.A.'S
MOTION TO DISMISS
*Dezfoli v. JPMorgan Chase Bank, et al.*, Case No. 2:16-cv-04315 (R) (RAO)

1    factually accurate information about account on which plaintiff "d[id] not deny that

2    she is an authorized user").[3]

3          Moreover, as courts routinely recognize, not only is furnishing truthful

4    authorized-user information to the credit bureaus accurate for purposes of credit-

5    reporting statutes, but it is also expressly authorized by federal law.  As the court

6    recently explained in *Pedro*, federal regulations promulgated by the Consumer

7    Financial Protection Bureau "'expressly authorize[] creditors to send authorized

8    user tradeline information to consumer reporting agencies for inclusion in

9    authorized users' credit reports.'"  2016 WL 2756217, at *4 (quoting and agreeing

10   with defendants' argument; citing 12 C.F.R. Pt. 1002, Supp. I, § 1002.10).[4]

11

12   [3]     *See also Pagazani v. Equifax Info. Servs., LLC*, No. 15-cv-61467, 2016 WL
     2997586, at *5 (S.D. Fla. May 25, 2016) (rejecting plaintiff's FCRA challenge to
13   credit bureau's reporting on authorized users where "there [was] no dispute that the
     [a]ccount was accurately reflected on [plaintiff's] credit report[,]" but plaintiff
14   challenged "the underlying legal issue of whether an account for which an
     individual is only an authorized user is properly associated with that individual's
15   credit history—or, conversely, whether including that information 'creates a
16   misleading impression in a material sense'").

17

18   [4]     The Bureau's Regulation B—which implements the federal Equal Credit
     Opportunity Act—requires creditors to furnish credit information on authorized
19   users when they are spouses of the primary accountholder, and expressly
20   authorizes creditors to do the same when the authorized users are not married to
     the primary accountholder.  *See* 12 C.F.R. § 1002.10(a)-(b) (2011); 12 C.F.R. Pt.
21   1002, Supp. I, § 1002.10 (2011).  The purpose behind this requirement is to allow
22   authorized users—many of whom, at the time the statute was enacted and the
     regulation promulgated, were the wives of the primary cardholder and had
23   difficulty building credit history—to establish their creditworthiness.  *See* Robert B.
24   Avery *et al.*, *Credit Where None Is Due? Authorized User Account Status and
     "Piggybacking Credit"* 1 (Fed. Reserve Bd. Mar. 5, 2010), *available at*
25   https://www.federalreserve.gov/pubs/feds/ 2010/201023/201023pap.pdf.
26   Consistent with this guidance, "creditors generally have followed a practice of
     furnishing to credit bureaus information about all authorized users, whether or not
27   the authorized user is a spouse[.]"  *Id.*

28
                                           -7-
                    MEMORANDUM IN SUPPORT OF CHASE BANK USA, N.A.'S
                                                      MOTION TO DISMISS
              *Dezfoli v. JPMorgan Chase Bank, et al.*, Case No. 2:16-cv-04315 (R) (RAO)

1   Dezfoli can hardly be heard to complain about the "inaccuracy" of credit

2   information that federal law expressly authorizes Chase to furnish.

3        To the extent Dezfoli asserts the information furnished was nonetheless

4   "inaccurate" because he did not want his cousin to add him as an authorized user in

5   the first place, and that Chase should not have furnished authorized user

6   information to the CRAs without first confirming with Dezfoli that he consented to

7   his authorized user status, this allegation fails because the CCRAA imposes no

8   such obligations.  *See* FAC ¶ 42.  Dezfoli affirmatively alleges that he *was* added

9   as an authorized user, and he alleges no facts suggesting that given his authorized-

10   user status, the information Chase furnished was factually inaccurate.

### III.   The FAC Fails To State A Claim Under The UCL

11

12        Dezfoli's UCL claim fails for three reasons, each of which independently

13   suffices to warrant dismissal.  *First*, the claim is pleaded in an entirely formulaic

14   and conclusory manner, simply reciting the elements of the unfair, fraudulent, and

15   unlawful incarnations of the UCL cause of action with *zero* factual amplification.

16   *Second*, because Dezfoli seeks, under the guise of a UCL claim, to impose

17   additional requirements or prohibitions on Chase in its capacity as a furnisher of

18   credit information, the claim is preempted by the FCRA.  *Third*, because Dezfoli

19   cannot seek restitution and lacks standing to sue for an injunction, his UCL claim

20   should be dismissed.

### A.   The UCL Claim Is Inadequately Pleaded

21

22        Dezfoli's UCL claim is pleaded in conclusory fashion and thus fails to meet

23   the pleading burden imposed by Rule 8, much less the heightened burden under

24   Rule 9(b) applicable to his claim under the "fraudulent" prong.

25        For his UCL claim under the "unfair" prong, for example, Dezfoli alleges

26   that Chase's furnishing of credit information on authorized users is "decept[ive]"

27   and "improperly threatens and pressures consumers into paying accounts."  FAC

28

-8-

MEMORANDUM IN SUPPORT OF CHASE BANK USA, N.A.'S
MOTION TO DISMISS
*Dezfoli v. JPMorgan Chase Bank, et al.*, Case No. 2:16-cv-04315 (R) (RAO)

¶ 52.  But he never explains how this is so.  He does not allege, for example, that Chase ever told him he was liable for, much less threatened or pressured him into paying, his cousin's credit card balance.  Dezfoli makes perfunctory assertions that Chase "unfairly profited from Plaintiff and Class Members" (*id.*), but the FAC does not allege that he—or any other authorized user—made a payment to Chase because he was led to believe he was liable for the debt.

Moreover, Dezfoli's conclusory allegations about "unfairness" "appear for the first time when [Dezfoli] actually identifies [his] UCL claim, and seem to be thrown in just to plead the claim exhaustively." *Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-727-LAB-MDD, 2012 WL 5382218, at *5 (S.D. Cal. Nov. 1, 2012).  "*Twombly* is clear that 'a formulaic recitation of the elements of a cause of action' isn't enough to survive a motion to dismiss, and yet that is precisely what [Dezfoli] gives [Chase] and the Court with respect to [his] UCL claim based on … 'unfair' practices." *Id.*

The FAC's shortcomings are even more apparent with respect to Dezfoli's UCL claim under the "fraudulent" prong, which is subject to the heightened pleading standards of Rule 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Cornejo v. JPMorgan Chase Bank*, No. CV 11-4119 CAS VBKX, 2011 WL 6149246, at *5 (C.D. Cal. Dec. 12, 2011).  Notwithstanding his burden to plead facts "'specific enough to give defendant[] notice of the particular misconduct'" alleged, *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001), Dezfoli makes only the conclusory assertion that Chase "deceived" him "by falsely reporting unauthorized debts on [his] credit report, leading [him] to believe that the reported debts were owed," FAC ¶ 58.  But, critically, Dezfoli never explains how the debts—which he does not dispute were reported as belonging to his cousin, and not to him—were reported "falsely," or how that (accurate) report misled him to believe that he owed the debt.  Indeed, he never alleges that he was

-9-

MEMORANDUM IN SUPPORT OF CHASE BANK USA, N.A.'S MOTION TO DISMISS
*Dezfoli v. JPMorgan Chase Bank, et al.*, Case No. 2:16-cv-04315 (R) (RAO)

in any way under the misimpression that he owed the debt (or that he ever paid anything on it).  His additional, boilerplate allegations that he was "likely to be deceived" by some unspecified "fraudulent business practice[s]," and that his unspecified "reliance upon [Chase's] deceptive statements is reasonable due to the unequal bargaining powers" of the parties (*id.* ¶ 57) are insufficient even under Rule 8, and certainly so under Rule 9(b).

Finally, as to the "unlawful" prong, the only predicate statute Dezfoli purports to "borrow" from is California Business and Professions Code § 17500. *See* FAC ¶¶ 62-63; *see Puentes v. Wells Fargo Home Mortgage, Inc.*, 160 Cal. App. 4th 638, 643-644 (Cal. Ct. App. 2008) ("The UCL does not proscribe specific activities," but instead "'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.").  As to that statute, all the FAC alleges is that Chase used unspecified "false advertising, marketing, and misrepresentations to induce Plaintiff and Class Members to pay off their accounts."  FAC ¶ 62.  The FAC does not identify any such advertising, marketing, or misrepresentations, much less allege that any such statements induced Dezfoli to pay a credit card debt for which he was not liable. Because the FAC fails to adequately allege a predicate violation of § 17500, Dezfoli's claim under the "unlawful" prong fails.  *See, e.g.*, *Barakezyan v. BMW of North Am., LLC*, CV 16-00173 SJO (GJSx), 2016 WL 2840803, at *13 (C.D. Cal. Apr. 7, 2016) ("Plaintiff cannot state a UCL claim based on unlawful conduct because Plaintiff has failed to properly plead any violations of a predicate law necessary to support such a claim.").[5]

---

[5]     If Dezfoli meant to predicate his UCL "unlawful" claim on any other alleged statutory violations—notwithstanding his failure to mention them—the claim fails in any event because, for the reasons discussed above and below, the FAC fails to state any claim under the FCRA, the CCRAA, or the CLRA.

-10-

MEMORANDUM IN SUPPORT OF CHASE BANK USA, N.A.'S MOTION TO DISMISS
*Dezfoli v. JPMorgan Chase Bank, et al.*, Case No. 2:16-cv-04315 (R) (RAO)

## B.    The UCL Claim Is Preempted

Even if the FAC adequately pleaded a UCL claim under any prong—and it does not—the claim would be preempted by the FCRA.

Consistent with Congress's "desire for uniformity of reporting obligations," the FCRA's "statutory scheme … establishes national requirements and preempts most state regulation."  *Gorman*, 584 F.3d at 1172; *see also Mortimer v. Bank of Am., N.A.*, No. C-12-01959 JCS, 2013 WL 57856, at *9 (N.D. Cal. Jan. 3, 2013). As relevant to furnishers like Chase, the statute provides that "[n]o requirement or prohibition may be imposed under the laws of any State … with respect to any subject matter regulated under … section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies[.]"  15 U.S.C. § 1681t(b)(1)(F).[6]

Through his UCL claim, Dezfoli seeks to impose state-law requirements on Chase related to the furnishing of information on authorized users that are additional to, and different from, the responsibilities imposed by the FCRA.  *See, e.g.*, FAC ¶¶ 51, 61, 64.  Any such claim is preempted.  *See, e.g.*, *Miller v. Bank of Am., N.A.*, 858 F. Supp. 2d 1118, 1124 (S.D. Cal. 2012) ("[T]he FCRA preempts claims brought under California's UCL insofar as they relate to the responsibilities of furnishers of credit information governed by section 1681s-2 of the FCRA." (collecting cases)); *Banga v. Allstate Ins. Co.*, No. CIV S-08-1518 LKK EFB PS, 2010 WL 1267841, at *5 (E.D. Cal. Mar. 31, 2010) ("The Ninth Circuit has implied that the FCRA preempts plaintiff's UCL claim, and district courts have

---

[6]    The statute narrowly excepts from this broad preemption clause claims brought under subsection (a) of the CCRAA.  *See* 15 U.S.C. § 1681t(b)(1)(F)(ii) ("this paragraph shall not apply … with respect to section 1785.25(a) of the California Civil Code").  As discussed above, Dezfoli's claim under § 1785.25(a) of the CCRAA fails because he has not alleged any incompleteness or inaccuracy in the information Chase furnished.  *See supra* Part II.

-11-

MEMORANDUM IN SUPPORT OF CHASE BANK USA, N.A.'S MOTION TO DISMISS
*Dezfoli v. JPMorgan Chase Bank, et al.*, Case No. 2:16-cv-04315 (R) (RAO)

uniformly found claims of this type to be preempted[.]"); *see also Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139, 1144 (N.D. Cal. 2005) (finding UCL claim preempted because "Congress intended the FCRA to preempt state laws regarding the duties of furnishers and the remedies available against them, rather than allowing different liabilities for furnishers depending on the state of suit").

**C.    Because Dezfoli Can Seek Neither Restitution Nor An Injunction, The UCL Claim Fails And Must Be Dismissed**

Finally, Dezfoli's UCL claim fails because he has not plausibly alleged entitlement to the only forms of relief that the UCL accords.  "Remedies for private individuals bringing suit under the UCL are limited to restitution and injunctive relief."  *Pom Wonderful LLC v. Welch Foods, Inc.*, No. CV 09-567 AHM (AGRx), 2009 WL 5184422, at *2 (C.D. Cal. Dec. 21, 2009).  Lacking any claim to either restitution or injunctive relief, Dezfoli's UCL claim should be dismissed.

Dezfoli has no claim to restitution for the simple fact that he does not allege that he paid *anything* to Chase on his cousin's credit card debt.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 947-48 (Cal. 2003); *see also Profant v. Have Trunk Will Travel*, No. CV 11-05339-RGK (OPx), 2011 WL 6034370, at *4 (C.D. Cal. Nov. 29, 2011) ("A restitution order requires that 'money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other.'" (citation and emphasis omitted)).  Because there is nothing to restore, Dezfoli cannot sue for restitution.  *See Korea Supply*, 63 P.3d at 947 (restitution under UCL limited to "funds in which [plaintiff] has an ownership interest").

Nor does he have standing to sue for an injunction.  A plaintiff seeking injunctive relief must allege not only that he has "suffered or is threatened with a 'concrete and particularized' legal harm," but also that there is "'a sufficient likelihood that he will be wronged again in a similar way.'"  *Bates v. United Parcel*

-12-

*Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  As the Ninth Circuit has recognized, plaintiffs whose relationship with a defendant has ended lack standing to sue because they "would not stand to benefit from an injunction requiring" the challenged policies to cease.  *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006).

Dezfoli seeks an injunction "requiring [Chase] to immediately cease" the acts challenged as unfair, fraudulent, and unlawful under his UCL claim—that is, the credit furnishing practices he claims injured him.  FAC ¶ 64.  But Dezfoli does not (and could not) allege that he is still an authorized user on his cousin's credit card.  To the contrary, he affirmatively alleges that Chase deleted the credit reporting associated with the account *before* he filed his complaint.  *See id.* ¶ 20. In view of those allegations, he lacks standing to sue for an injunction.  *See, e.g.*, *Schulken v. Washington Mut. Bank*, No. 09-CV-02708-LHK, 2012 WL 28099, at *7 (N.D. Cal. Jan. 5, 2012) (former loanholders lacked standing to seek injunction where it was "unclear why [they] would need the requested relief because they are not currently in a position to benefit from a change in Chase's policies and practices"); *McKenzie v. Federal Exp. Corp.*, 275 F.R.D. 290, 298 (C.D. Cal. 2011) (former employees lack standing to sue for injunctive relief).

Where, as here, neither form of relief theoretically available under the UCL is in fact available to the plaintiff, the claim should be dismissed.  *See, e.g.*, *Moran v. Screening Pros LLC*, No. 2:12-cv-05808-SVW-AGR, 2012 WL 10655744, at *9 (C.D. Cal. Sept. 28, 2012) ("Because injunctive and restitutionary relief are foreclosed to Plaintiff, the Court grants the Motion to Dismiss the UCL claims.").

### IV.   The FAC Fails To State A Claim Under The CLRA

Finally, the FAC fails to state a claim under the CLRA, which prohibits "unfair or deceptive acts or practices undertaken … in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

-13-

Cal. Civ. Code § 1770(a).  The statute has no application here and, even more

preliminarily, Dezfoli's claim is preempted.

### A.   The CLRA Claim Is Preempted

The gravamen of the CLRA claim, like each of Dezfoli's claims, is that

Chase furnished inaccurate credit information about Dezfoli, and thus

"misrepresent[ed] unauthorized debts that were placed on [his] credit reports."

FAC ¶ 67.  The claim thus seeks, under the guise of state law, to impose

unspecified requirements on Chase with respect to how credit information is

"placed on [his] credit reports."  For the reasons just discussed, this state law claim

is preempted by the FCRA.  *See, e.g.*, *Roybal v. Equifax*, 405 F. Supp. 2d 1177,

1181 (C.D. Cal. 2005) (CLRA claim preempted because it was "based on [an]

alleged injury arising purely from the reporting of credit information by a furnisher

of credit" (collecting cases)).

### B.   The CLRA Does Not Apply Here

The claim also fails in its own right.  As noted, the CLRA bars certain

practices "in a transaction intended to result or which results in the sale or lease of

*goods or services* to any consumer."  Cal. Civ. Code § 1770(a) (emphasis added).

The statute defines "goods" to mean "tangible chattels bought or leased for use

primarily for personal, family or household purposes," and "services" to mean

"work, labor, and services for other than a commercial or business use, including

services furnished in connection with the sale or repair of goods."  Cal. Civ. Code

§§ 1761(a), 1770(a).  Dezfoli does not identify any "transaction" with Chase, nor

does he allege any "goods" or "services" he bought or leased from Chase.  Nor

could he.

California law is clear that lending money on credit does not qualify as a

"good[]" or "service[]" within the meaning of the CLRA.  *See, e.g.*, *Berry v.*

*American Exp. Publ'g, Inc.*, 147 Cal. App. 4th 224, 229-30 (Cal. Ct. App. 2007)

-14-

(extension of credit is not a "good" or "service" for purposes of the CLRA); *see also Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal. App. 4th 29, 40 (Cal. Ct. App. 2015) ("A mortgage loan is not a 'good' because it is not a 'tangible chattel;' it is not a 'service' because it is not 'work, labor, or services … furnished in connection with the sale or repair of goods.'" (alteration in original)). California law is likewise clear that "loans are intangible goods and … ancillary services provided in the sale of intangible goods do not bring these goods within the coverage of the CLRA." *Consumer Sols. REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1016 (N.D. Cal. 2009); *cf. Townsend v. Nat'l Arbitration Forum, Inc.*, No. CV 09-9325-VBF (RNBx), 2012 WL 12736, at *4 (C.D. Cal. Jan. 4, 2012) ("arbitration procedure to determine amounts owed under a [bank] cardholder agreement" does not constitute a service under CLRA). Dezfoli's CLRA claim fails because neither Chase's issuance of a credit card to him as an authorized user nor its furnishing of credit information in connection with that credit card account falls within the scope of the statute.

## C.   The CLRA Claim Is Inadequately Pled

Finally, the claim fails because none of the four subsections of the CLRA that Dezfoli claims Chase violated has any bearing here, and the FAC offers no factual support for their relevance, much less that Chase breached them. For example, merely parroting the statutory language in conclusory fashion, the FAC alleges that Chase violated the CLRA by "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." FAC ¶ 66(a) (citing Cal. Civ. Code § 1770(5)). The FAC says nothing about the "sponsorship, approval, status, affiliation, or connection" of Chase's credit furnishing. Again parroting the statute in conclusory fashion, the FAC also alleges that Chase

-15-

represented "that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." *Id*. ¶ 66(b) (citing Cal. Civ. Code § 1770(7)).  It is impossible even to guess at the relevance of that provision to Chase's alleged misconduct here.

The FAC alleges that Chase "made misrepresentations to Plaintiff and the Class with regards to the unauthorized debts that were placed on their credit reports, and the obligations associated with those misplaced debts." *Id*. ¶ 67; *see also id.* ¶ 66(c) (alleging Chase violated the CLRA by "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law").  But the FAC does not allege a single such communication—much less misrepresentation—between Chase and Dezfoli. Dezfoli does not allege, for example, that Chase demanded payment from Dezfoli or represented to Dezfoli that he was liable for that debt.

## CONCLUSION

For the foregoing reasons, the First Amended Complaint should be dismissed.  Because each of Dezfoli's claims clearly fails as a matter of law, and because he has already amended the complaint (twice), dismissal should be with prejudice.

Dated:  July 25, 2016                    Respectfully Submitted,

By: /s/    *Christopher T. Casamassima*
              CHRISTOPHER T. CASAMASSIMA

WILMER CUTLER PICKERING
    HALE AND DORR LLP

Attorneys for Defendant Chase Bank USA, N.A.

-16-

MEMORANDUM IN SUPPORT OF CHASE BANK USA, N.A.'S MOTION TO DISMISS
*Dezfoli v. JPMorgan Chase Bank, et al.*, Case No. 2:16-cv-04315 (R) (RAO)