Christopher T. Casamassima (SBN: 211280)
chris.casamassima@wilmerhale.com
Matthew Benedetto (SBN: 252379)
matthew.benedetto@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: +1 213 443 5300
Facsimile: +1 213 443 5400

Alan E. Schoenfeld (*pro hac vice*)
alan.schoenfeld@wilmerhale.com
Jenny Pelaez (*pro hac vice*)
jenny.pelaez@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: +1 212 230 8800
Facsimile: +1 212 230 8888

Attorneys for Defendant
Chase Bank USA, N.A.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

NAVEED DEZFOLI, individually, and on all others similarly situated,

Plaintiff,

vs.

CHASE BANK USA, N.A. and DOES 1-100,

Defendants.

Case No. 2:16-cv-04315 (R) (RAO)

**REPLY IN FURTHER SUPPORT OF DEFENDANT CHASE BANK USA, N.A.'S MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Hearing Date: September 6, 2016
Time: 10:00 A.M.
Courtroom: 8
Judge: Hon. Manuel L. Real

# INTRODUCTION

Naveed Dezfoli does not dispute that his cousin added him as an authorized user on the cousin's Chase credit-card account. He thus does not dispute that he was *in fact* an authorized user. He nevertheless sues Chase for furnishing that fact to the credit bureaus. But that fact was accurate, as was all the other information Chase furnished: Dezfoli never disputes, for example, that the credit-card account was reported as belonging to his cousin and not to him. Chase's credit furnishing was thus entirely proper. Nor does Dezfoli dispute that federal law allows Chase both to add authorized users to credit-card accounts upon the accountholder's request—without the authorized user's advance consent—and to furnish credit information to credit reporting agencies regarding authorized users. Dezfoli's concessions and these operative, undisputed principles of federal law dispose of this case as a matter of law on the pleadings.

Dezfoli hardly says otherwise. He contends that his First Amended Complaint ("FAC") (ECF No. 17)—his third pleading in the case—should not be dismissed unless the Court concludes that he "could prove no set of facts in support of his claim that would entitle him to relief." ECF No. 25 (Pl.'s Opp. ("Opp.")) 4. The Supreme Court discarded that pleading standard, however, in favor of *Twombly* and *Iqbal*'s more robust plausibility standard, and Dezfoli makes no effort to explain how the FAC satisfies those requirements. At every turn, Dezfoli contends that he should be given leave to replead, but he mentions no facts he could plausibly allege, consistent with Rule 11, that would salvage his claims. The FAC should be dismissed with prejudice.

# ARGUMENT

## I. The FAC Fails To State A Claim Under The FCRA

Dezfoli concedes that he cannot bring a Fair Credit Reporting Act ("FCRA") claim against Chase under 15 U.S.C. § 1681s-2(b) unless he first disputed the information Chase furnished with a consumer reporting agency ("CRA"). ECF

No. 24-1 (Def.'s Mem. Supp. Mot. Dismiss ("MTD")) 4-5; Opp. 4.[1] The FAC is entirely silent on that critical point—Dezfoli does not include a single allegation about any dispute with a CRA—and his FCRA claim accordingly must be dismissed.

Dezfoli concedes that the FAC includes no allegations that he disputed Chase's furnishing with a CRA. He contends, however, that the Court should "draw[ the] reasonable inference[]" (Opp. 4) that he communicated his dispute to a CRA—and not directly to Chase alone—based on the bare allegation that "Defendant … failed to correct the disputed information within thirty days of Plaintiff's dispute of that information" (FAC ¶ 20). In the alternative, he asks for leave to replead the claim to "add information with regard to which agency he disputed the 'non-authorized user' appearance on his credit report to." Opp. 5 (emphasis omitted).

Neither of Dezfoli's attempts to salvage his FCRA claim is persuasive. The bare allegation he points to in the FAC does not plausibly lend itself to the conclusion that he disputed the furnished information with a CRA, as opposed to directly with Chase. Dezfoli is asking the Court to guess, not to draw a "reasonable inference."[2] The FAC nowhere mentions a specific CRA, nor does it

---

[1] Dezfoli agrees that he cannot bring an action against Chase under section 1681s-2(a) of the FCRA. MTD 4; Opp. 4.

[2] Dezfoli says that the cases Chase cited in its opening brief are distinguishable from the facts here because in those cases the plaintiff expressly alleged that he disputed the credit information directly with the furnisher, and not with the CRA. Opp. 5. But the case law is equally clear that where the complaint fails to allege that the plaintiff disputed the information with a CRA, the section 1681s-2(b) claim must be dismissed. *See, e.g.*, *Cross v. Wells Fargo Bank, N.A.*, No. CV11-0047 AHM (OPx), 2011 WL 6136734, at *9 (C.D. Cal. Dec. 9, 2011) ("Plaintiffs fail to state a claim … because they do not allege that they disputed their credit ratings with any credit reporting agencies and do not allege that any agency subsequently notified Defendant of any such dispute."); *cf. Fleischmann v. Care Credit*, No. CV 12-08032 DDP (FMOx), 2012 WL 6082893, at *3 (C.D. Cal.

allege, for instance, when Dezfoli disputed the information, how he communicated with the CRA (by phone or in writing), what he told the CRA, whether the CRA communicated the dispute to Chase, or what, if anything, the CRA said to Dezfoli in response to his dispute. Absent any allegations supporting the inference that Dezfoli disputed the information Chase furnished with a CRA, no such inference should be drawn.[3]

For much the same reason, there is no basis to grant Dezfoli leave to amend. Even in his opposition, where he insists he should be given leave to replead the FCRA claim, Dezfoli says only that he will in some future pleading "add information with regard to which agency he disputed the 'non-authorized user' appearance on his credit report to." Opp. 5 (emphasis omitted). There is no reason for Dezfoli to be so coy. The case law has been clear on this point for more than a decade. If Dezfoli could have claimed that he disputed the information Chase furnished with a CRA prior to filing the FAC, he should have done so, and should have provided the relevant factual amplification that would render his FCRA claim

---

Dec. 6, 2012) (notwithstanding plaintiff's failure to allege that she disputed with a CRA, court found section 1681s-2(b) claim plausibly alleged based on exhibit to the complaint showing an Experian dispute confirmation number, which "suggests that [p]laintiff may be able to substantiate a claim that she reported the dispute to a CRA and, perhaps, that the CRA informed [furnisher] [d]efendants").

[3] Where a complaint alleges that the plaintiff disputed credit information with a CRA, but fails to allege that the CRA in turn notified the furnisher of the dispute, courts sometimes infer at the motion-to-dismiss stage that the CRA communicated the dispute to the furnisher. *See, e.g.*, *Ovsepyan v. OneWest Bank, FSB*, No. CV 11-8714-GHK (RZx), 2012 WL 10423213, at *4 (C.D. Cal. June 14, 2012). Courts are willing to draw that inference because plaintiffs do not, at the pleading stage, ordinarily have access to communications between the CRA and the furnisher. But Dezfoli points to no case where the court inferred—based on nothing—that the plaintiff disputed the credit information with a CRA in the first place. Whether a plaintiff disputed a credit report with a CRA—and what he told the CRA, how, and when—are facts easily within the plaintiff's possession. If they are true, he can easily plead them.

plausible. Having elected not to do so in any of his three complaints, having again chosen not to say anything specific on the point in his opposition, and given that there is no plausible basis for disputing the accuracy of Chase's reporting of Dezfoli as an authorized user in any event, Dezfoli should not now be permitted to subject the Court and Chase to yet another round of briefing on a motion to dismiss. *See* Part V *infra*.

## II. <u>The FAC Fails To State A Claim Under The CCRAA</u>

To state a claim against Chase under the sole non-preempted provision of the California Consumer Credit Reporting Agencies Act ("CCRAA"), Dezfoli must plausibly allege that Chase furnished "incomplete or inaccurate" credit information about him to the CRAs. Cal. Civ. Code § 1785.25(a). But as Chase explained in its motion, none of the credit information Chase furnished was factually inaccurate or incomplete. *See* MTD 5-7. Dezfoli does not dispute the point: He does not contend, for example, that Chase inaccurately indicated that he was a contractually liable primary accountholder (as opposed to an authorized user), or that Chase furnished the wrong account balance.

Instead, Dezfoli claims that "reporting [him] as an 'authorized user' was derogatory and inaccurate as he had never permitted it.'" Opp. 6. Dezfoli's grievance, then, is that there is something improper about Chase allowing his cousin to add Dezfoli to the cousin's credit-card account as an authorized user without his prior consent, and because of that, furnishing credit information about him with respect to that account is somehow inaccurate. But as Chase explained in its motion, that grievance has no basis in law. Federal regulations expressly permit credit-card issuers to add authorized users to accounts *at the accountholder's request*—*i.e.*, without the authorized user's advance consent. *See* MTD 2 n.1 (quoting 12 C.F.R. Pt. 1026, Supp. I § 1026.12 ¶ 12(a)(1)(6) (2014) ("A card issuer may issue a credit card to the person who requests it, and to anyone else for whom that person requests a card and who will be an authorized user on the requester's

account. In other words, cards may be sent to consumer A on A's request and also (on A's request) to consumers B and C, who will be authorized users on A's account.")). And federal regulations likewise permit credit-card issuers to furnish credit information about authorized users to the CRAs. *See* MTD 7 & n.4. Dezfoli has literally nothing to say about these regulations in his opposition, yet that is the law that governs his pleading here. Chase's furnishing was entirely consistent with federal law.

Dezfoli was an authorized user on his cousin's account; he concedes that fact. As the cases cited in Chase's motion make clear (MTD 6-7 & n.4), reporting truthful information about an individual as an authorized user is neither inaccurate nor derogatory. *See, e.g.*, *Pagazani v. Equifax Info. Servs., LLC*, No. 15-cv-61467, 2016 WL 2997586, at *5 (S.D. Fla. May 25, 2016); *Pedro v. Equifax, Inc.*, __F. Supp. 3d __, No. 1:15-CV-3735-TWT, 2016 WL 2756217, at *4 (N.D. Ga. May 12, 2016), *appeal docketed*, No. 16-13404 (11th Cir.); *Bailey v. Equifax Info. Servs., LLC*, No. 13-10377, 2013 WL 3305710, at *6 (E.D. Mich. July 1, 2013). Dezfoli complains (Opp. 6) that none of these cases involved authorized users who claimed that they did not want to be authorized users. But that distinction is immaterial. As the federal regulations cited above make clear, authorized users can be added to an account, and information can be furnished with respect to them, without their prior consent.

## III. The FAC Fails To State A Claim Under The UCL

### A. The UCL Claim Is Inadequately Pleaded

As Chase showed in its motion (MTD 8-13), the FAC fails to plausibly plead an Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et. seq.*, claim under any of the statute's three prongs—unfair, fraudulent, or unlawful.

***Unfair.*** The FAC's allegations supporting Dezfoli's UCL-unfairness claim are entirely conclusory; nothing in his opposition changes that.

Dezfoli says that he adequately pleaded unfairness by alleging that Chase's "reporting [individuals] as 'authorized users' on their credit reports when they were, in fact, 'non-authorized users' caused substantial injury to their credit ratings," and "provides no benefit to the individuals." Opp. 7 (emphasis omitted). Those are not allegations this Court is required to credit; they are simply recitations of one test for unfairness. *See Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965, 972 (C.D. Cal. 2014) (one test for "unfairness" requires showing, *inter alia*, that "the consumer injury is substantial" and "any countervailing benefits to consumers or competition do not outweigh the injury"). Dezfoli further contends that "it is reasonable to infer that the appearance of additional debts on Plaintiff and other Class members' credit reports, which causes a decreases [sic] in their credit rating, creates the appearance that a debt is owed, and should be paid[.]" Opp. 7-8. Dezfoli again confuses "reasonable inference" with bald speculation. The FAC supplies no reason to believe that Dezfoli—or anyone else—was misled to believe that they in fact owed the debt associated with the account on which they are merely authorized users. Beyond those bare allegations, Dezfoli offers nothing in support of his claim that Chase's furnishing practices are "immoral, unethical, oppressive, or unscrupulous." *Dana v. Hershey Co.*, __ F. Supp. 3d __, 2016 WL 1213915, at *10 (N.D. Cal. Mar. 29, 2016), *appeal docketed*, No. 16-15789 (9th Cir.). His UCL-unfairness claim accordingly fails.

***Fraudulent.*** Like his unfairness claim, Dezfoli's UCL-fraudulent claim rests on the entirely unsupported proposition that he (and other putative classmembers) were "potentially deceived into believing they owned the 'non-authorized user' accounts." Opp. 8 (emphasis omitted). The claim fails for the same reasons given above. Dezfoli never explains (much less plausibly explains) how Chase's furnishing regarding the credit-card account—which he does not dispute was reported as belonging to his cousin, and not to him—"deceived" him into believing he "owned" his cousin's account. *See* MTD 9-10. While Dezfoli

recites the "who, what, and when" of Chase's alleged misrepresentation, he never identifies or explains what was "false or misleading" about the conduct he describes. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("[P]laintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false[.]").

***Unlawful***. As Chase showed in its motion, the FAC failed to plead the elements of the only predicate violation asserted to support Dezfoli's UCL-unlawful claim. *See* MTD 10. Dezfoli concedes the point and abandons any claim under California Business and Professions Code § 17500. *See* Opp. 8-9. Instead, he now argues, his UCL-unlawful claim can be predicated on a violation of "the [Consumer Legal Remedies Act ('CLRA')], which would constitute unlawful conduct." Opp. 9. But, as Chase explained in its motion, Dezfoli's CLRA claim fails for at least three independent reasons. *See* MTD 13-16. Dezfoli's opposition makes no attempt whatsoever to defend his CLRA claim, so he assuredly cannot predicate his UCL-unlawful claim on it. *See Shull v. Ocwen Loan Servicing, LLC*, No. 13-CV-2999-BEN WVG, 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014) ("Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate.").

### B. The UCL Claim Is Preempted

Dezfoli concedes that he cannot seek restitution from Chase under the auspices of his UCL claim, as he has not paid anything to the bank. *See* MTD 12; *see also* Opp. 9. He advances his UCL claim, then, only for purposes of an injunction barring "Chase's [r]eporting [o]f '[n]on-[a]uthorized [u]sers.'" Opp. 9 (emphasis omitted). As Chase explained in its motion (MTD 11-12), Dezfoli's UCL claim is preempted because his request for injunctive relief plainly seeks to impose a "requirement … relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F).

Dezfoli tries to rescue his UCL claim from preemption by arguing that this state-law claim "is unrelated to the FCRA" because it seeks to enjoin Chase from "placing 'non-authorized users' as 'authorized users' on its accounts which ultimately results in inaccurate information being placed on credit reports." Opp. 10 (emphasis omitted). Dezfoli's effort to rebrand the claim need not detain the Court long. Dezfoli does not claim that the act of adding him as an authorized user, standing alone, harmed him in any way; rather, the only injury Dezfoli complains about in this case arises from Chase's furnishing of credit information. Accordingly, the only conduct he could plausibly seek to enjoin relates to Chase's furnishing of credit information. Indeed, he candidly acknowledges that the injunction he seeks would bar "Chase's [r]eporting [o]f '[n]on-[a]uthorized [u]sers.'" Opp. 9 (emphasis omitted). That request is manifestly "related to the FCRA," and plainly seeks to impose state-law requirements on Chase related to the furnishing of information on authorized users that are additional to, and different from, the responsibilities imposed by the FCRA. Specifically, under Dezfoli's injunction, Chase would be required to obtain prior consent from authorized users before furnishing information about them. As the cases Chase cited in its motion (MTD 11-12) make clear, such a request is preempted.

### C. Dezfoli Lacks Standing To Sue For A UCL Injunction

Dezfoli is no longer an authorized user on his cousin's credit card and Chase deleted the credit information associated with the account. Yet Dezfoli insists that he has standing to sue for an injunction barring Chase's future "[r]eporting of '[n]on-[a]uthorized [u]sers,'" because "there is no indication that this conduct [*i.e.*, adding Dezfoli as an authorized user and furnishing information about him] cannot or will not happen again." Opp. 9 (emphasis omitted). Even setting aside that the FAC includes no allegations to this effect, that does not suffice.

As the Supreme Court has made clear, a party has Article III standing to sue only when the harm they seek to enjoin is "certainly impending." *Clapper v.*

*Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013). Dezfoli's parade of negatives—in which there is "no indication" that conduct "cannot or will not happen again"—fails to meet that standard. Because there is nothing in the FAC to plausibly establish "a sufficient likelihood that he will be wronged again in a similar way," *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (*en banc*), he lacks standing to sue for injunctive relief.

**IV. <u>The FAC Fails To State A Claim Under The CLRA</u>**

As Chase showed in its motion, Dezfoli's CLRA claim is preempted and inadequately pleaded, and in any event the statute does not apply to the facts of this case. *See* MTD 13-16. Dezfoli's opposition fails entirely to defend his CLRA claim, so it should be deemed abandoned and dismissed. *See Shull*, 2014 WL 1404877, at *2; *see also Walsh v. Nev. Dep. of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (where opposition failed to address arguments in motion to dismiss, plaintiff failed to demonstrate a continuing interest in relief and claim was "effectively abandoned").

**V. <u>Leave To Replead Should Be Denied</u>**

This motion is addressed to Dezfoli's third pleading; he should not be given leave to file a fourth. As Chase has demonstrated, Dezfoli's entire theory—that there is something inaccurate, unfair, or unlawful about creditors furnishing information on authorized users without first independently confirming they consented to being added to the account—is at odds with federal law. Dezfoli never reckons with that crucial principle, and thus fails to offer any basis on which to conclude that any future pleading will assert a plausible claim. Dezfoli vaguely promises that "he could add additional facts and documents to support his claims[.]" Opp. 11. That does not suffice. *See, e.g.*, *Blomquist v. Washington Mut.*, 384 F. App'x 665, 665-66 (9th Cir. 2010) ("district court did not abuse its discretion by dismissing the claims without leave to amend because [plaintiff] failed to explain how he could cure the pleading deficiencies"); *Iyigun v. Cavalry*

*Portfolio Servs.*, LLC, No. CV-12-8682-MWF JEMX, 2013 WL 950947, at *2 (C.D. Cal. Mar. 12, 2013) (dismissing complaint with prejudice and refusing leave to amend because plaintiff had multiple opportunities to plead and was unable to explain any amendments to address deficiencies in complaint). Absent a concrete explanation of allegations he would supply, or theories he would advance, in a fourth complaint, Dezfoli's request for leave to amend should be deemed futile and denied.[4]

**CONCLUSION**

For the foregoing reasons, and all the reasons set forth in Chase's opening memorandum, the First Amended Complaint should be dismissed with prejudice.

Dated: August 23, 2016

Respectfully Submitted,

By: /s/ *Christopher T. Casamassima*
CHRISTOPHER T. CASAMASSIMA

WILMER CUTLER PICKERING
HALE AND DORR LLP

Attorneys for Defendant Chase Bank USA, N.A.

[4] Dezfoli contends that "[r]eview of denial of leave to amend is strictly reviewed[.]" Opp. 10. That is wrong; it is reviewed for "abuse of discretion," *Bozzio v. EMI Grp. Ltd.*, 811 F.3d 1144, 1148 (9th Cir. 2016), and, "[i]n the absence of evidence that [plaintiff] could cure the deficiencies in [his] pleadings through another amended complaint, the district court [does] not abuse its discretion in denying … leave to amend," *Coward v. JPMorgan Chase Bank, N.A.*, __ F. App'x __, 2016 WL 4269903, at *1 (9th Cir. Aug. 15, 2016).